UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Casey Jenkins, #349382, | ) | C/A No. 5:15-02241-JMC-KDW |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| | ) | |
| John R. Pate, | ) | |
| | ) | |
| Respondent. | ) | |

Casey Jenkins ("Petitioner"), a state prisoner, filed this pro se Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. This matter is before the court pursuant to 28 U.S.C. § 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(c) (D.S.C.), for a Report and Recommendation ("Report") on the Motion for Summary Judgment and Return filed by John R. Pate ("Respondent"). ECF Nos. 37, 38. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Petitioner of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to Respondent's Motion. ECF No. 39. Petitioner did not file a response within the time permitted by the court despite having been granted two extensions. ECF Nos. 43, 46. On March 16, 2016, Petitioner was ordered to inform the court whether he wished to continue to pursue this case and, if so, to file a response to the Motion for Summary Judgment. ECF No. 49. Petitioner filed a Motion for Summary Judgment on March 14, 2016. ECF Nos. 52, 52-3; *see Houston v. Lack*, 487 U.S. 266, 271 (1988) (pro se prisoner's pleading is deemed "filed" at moment of delivery to prison authorities for forwarding to district court). On March 28, 2016, Petitioner filed a Response in opposition to Respondent's Motion for Summary Judgment. ECF No. 53. Respondent filed a Reply to Petitioner's Response

on April 7, 2016, ECF No. 59, and a Response to Petitioner's Motion for Summary Judgment on April 13, 2016. ECF No. 60. Petitioner filed a Reply to Respondent's Response on April 25, 2016. ECF No. 62. Having carefully considered the parties' submissions and the record in this case, the undersigned recommends that Respondent's Motion for Summary Judgment be granted and that Petitioner's Motion for Summary Judgment be denied.

I.    Procedural History

Petitioner is currently incarcerated at Walden Correctional Institution, part of the South Carolina Department of Corrections prison system. ECF No. 51. At the time he filed the Petition in this case, Petitioner was incarcerated at Allendale Correctional Institution. Pet. 1, ECF No. 1. On September 10, 2008, Petitioner was charged by the grand jury in Berkeley County with trafficking in cocaine in excess of 200 grams. App. 121-22.[1] On January 18, 2012, Petitioner, represented by retained Attorney J. Mitchell Lanier ("plea counsel"), appeared in General Sessions Court at Moncks Corner, South Carolina before Honorable R. Markley Dennis, Jr. ("plea judge") to enter a guilty plea to a lesser-included offense of the charged crime (trafficking in cocaine twenty-eight to one hundred grams, first offense). App. 2. The State was represented at the plea hearing by Attorney Ben Shelton, an Assistant Solicitor, who informed the plea judge that the State had agreed to a negotiated sentence with a cap of twelve years "so effectively in the range of seven to twelve years." App. 3. Both Petitioner and plea counsel indicated that they agreed with the plea, Petitioner stated that he was satisfied with plea counsel's representation, and plea counsel said that he had fully investigated the matter and had shared the results of his

---

[1] App. stands for Appendix of the record that was before the Post-Conviction Relief ("PCR") court. The Appendix is contained on this court's docket at ECF No. 37-1.

investigation with Petitioner over a four-year period. App. 4. Plea counsel acknowledged that he had negotiated down from a potential mandatory twenty-five year sentence to a cap of twelve years and stated that he believed the plea to be in Petitioner's best interest. App. 5. Petitioner agreed that the plea was in his best interest. App. 6. Petitioner answered affirmatively when he was asked if he understood the trial-related constitutional rights he was giving up by pleading guilty and denied that he had been threatened or promised anything other than the negotiated sentence for pleading guilty. App. 6-7. The State's attorney recited the facts underlying the charge against Petitioner, stating that Defendant was the delivery person for a May 4, 2008 controlled buy involving "between twenty-eight and a hundred grams" of cocaine that was set up through a confidential informant ("C.I.") who made "several recorded calls to the defendant setting up the buy in front of officers who were watching." App. 7. Plea counsel then argued for a reduced sentence, App. 8-11, and Petitioner's brother spoke on Petitioner's behalf, App. 12. Petitioner then spoke, saying "I accepted responsibility," but also expressing concern about corruption in ranks of "police officers." App. 13. The plea judge then expressed some concern about whether Petitioner really wished to plead guilty, whereupon Petitioner stated "I accept my guilt as far as reading rights. I'm just going to go ahead and say that I am guilty, Your Honor." App. 14. Petitioner acknowledged knowing that his sentence would be without the possibility of parole, and the court then sentenced him to eight years in prison. App. 17. Petitioner did not file a direct appeal.

Petitioner filed a post-conviction relief ("PCR") application on July 17, 2012, raising numerous grounds for relief involving claims of ineffective assistance of plea counsel. App. 19-26. The following is a brief summarization of the grounds for relief: failure to adequately

investigate; failure to move to suppress evidence based on chain of custody, and failure to challenge a forfeiture. App. 21-22. After the State filed its Return to the PCR application, App. 28-32, on or about March 14, 2013, Petitioner filed an amended PCR application, expanding on his original claims and adding the following additional claims: "[t]he State violated the Fruit of the poisonous tree doctrine by failure to maintain a proper chain of custody . . . counsel was ineffective at assistance by failure to perfect an appeal . . . the State lacked jurisdiction on the fact of the matter of a variance in the CDR code." App. 35. On August 13, 2013, an attorney, George B. Bishop, Jr. ("Attorney Bishop"), filed a second amendment to the PCR application on Petitioner's behalf in which he stated that Petitioner was claiming to be held unlawfully because of

1.   Ineffective Assistance of Counsel

a.   Counsel failed to do any investigation in reference to establish that the plaintiff was never in poss. of any drugs.

2.   Sufficiency of the evidence.

a.   Lead investigator alleges that he was the one who seized the alleged drugs from the plaintiff when in fact the lead investigator was inside the residence the entire time.

b.   The Applicant alleges that he never had any knowledge of the alleged drugs.

c.   Applicant along with witness swear under oath that the alleged drugs were already under another vehicle prior to the plaintiff's arrival.

App. 45. Attorney Bishop added the following additional claim: "the Circuit Court in Berkeley County was without jurisdiction to accept a plea of guilty because there was not an indictment in existence charging him with the offense for which he pled guilty to: the offense which he pled

4

guilty to was not a lesser-included offense of the offense he was indicted for and the Applicant never waived presentment to the Grand Jury process to the offense for which he was convicted of." *Id*. At the end of November 2013, Petitioner sent a pro se motion to the Berkeley County Clerk of Court (filed on December 3, 2013) asking to relieve his court-appointed counsel, Charles T. Brooks, III, ("PCR counsel") from representation. App. 50-55. However, on December 12, 2013, PCR counsel filed a second motion to amend the PCR application on Petitioner's behalf. App. 56-60. In that amendment, PCR counsel included additional argument in support of the claim of lack of subject-matter jurisdiction to accept the guilty plea based on the failure of the Berkeley County Grand Jury to lawfully indict Petitioner for the precise crime to which he pleaded guilty during an established term of the Berkeley County General Sessions Court. App. 59. Thereafter, on January 13, 2014, PCR counsel filed a motion for summary judgment stating the following as the claims on which the motion was based:

1.  Applicant's indictment states that on September 10, 2008, the Grand Jury of Berkeley County convened in a Court of General Sessions to indict him which is clearly perjury on a State document.

2.  Letter from the Clerk of court states there was not a Court of General Sessions held that day.

3.  The lack of Subject Matter Jurisdiction.

4.  The lack of personal jurisdiction.

5.  The violation of the U.S. Constitution Amendment 5.

6.  The violation of the State Constitution and the State's statutory provisions 14-9-210.

7.  The illegal and false conviction according to law.

8.  The evidence that was said to be had does not exist. (The recorded

conversation). No audio or video.

9.    Attorney Mitchell Lanier and Prosecutor Benjamin T. Shelton's suppression of evidence from applicant.

App. 61-62. On January 9, 2014, PCR counsel filed a "Motion of Wait [sic] of Mandamus" on Petitioner's behalf, raising his subject-matter jurisdiction claim and seeking to have Petitioner's conviction and sentence vacated or seeking an evidentiary hearing. App. 64-73.

An evidentiary hearing on Petitioner's PCR Application was convened on January 13, 2014 in Charleston, South Carolina before the Honorable Kristi Lea Harrington ("PCR judge"). PCR counsel represented Petitioner and Assistant Attorney General Ashleigh R. Wilson represented the State at the hearing. App. 74. Petitioner and the attorney who represented the State at the plea hearing, Benjamin Shelton ("Attorney Shelton") testified. App. 75.[2] Petitioner was given some additional time to meet with PCR counsel before the hearing testimony began.[3] PCR counsel stated that Petitioner's claims were "involuntary plea" and "ineffective assistance of counsel" and were based on Petitioner's contention that the plea judge acted without subject-matter jurisdiction in taking his guilty plea because he pleaded to an unindicted crime that was not a lesser-included offense of the charged crime and because the grand jury that indicted Petitioner met during a time when there was no General Sessions court being held in Berkeley

---

[2] Petitioner's plea counsel died before the PCR hearing and, thus, did not testify at the PCR hearing.

[3] At the beginning of the hearing and throughout his direct-examination testimony, Petitioner was reminded that, if he was successful in PCR, he would face trial on the original charge that was pending against him at the time he entered his guilty plea and that he would, again, face a mandatory minimum sentence of twenty-five years without the possibility of parole. He acknowledged those facts and indicated that he wished to proceed with his PCR claims. App. 78-80, 85-87, 93, 99.

6

County. App. 82-84, 90-91, 93-94. According to Petitioner, plea counsel told him "everything was stacked against [him]," but that his first PCR counsel, Attorney Bishop, could not obtain some of the evidence that the State supposedly had. App. 86. Petitioner testified that plea counsel was retained and advised him to enter the plea, but he regretted doing it. App. 87-88. On cross examination, Petitioner testified that he and plea counsel met several times during the four years that the trafficking charge was pending, and plea counsel advised him to plead guilty because the State was offering a "7 year sentence" instead of the twenty-five year mandatory minimum sentence he was facing and that it would be the only offer they would get. App. 96-97. Petitioner acknowledged that he told the plea judge that he wanted to plead guilty, but he denied that he was telling the truth. Instead, Petitioner said that plea counsel "coached" him and told him what to say. App. 97. Petitioner acknowledged his affirmative responses to the plea judge's questions and said that he was coached, but his responses were truthful "you know, for me not to get 25 years." App. 98.

Attorney Shelton testified on direct examination that the drug charge that was pending against Petitioner was "a drug task force controlled sting operation where they were setting up a controlled buy with [Petitioner] being the person who was bringing the drugs." Attorney Shelton testified that a C.I. was used and there were "video conservations between the confidential informant and [Petitioner] that were overheard by a member of the drug task force." App. 101. According to Attorney Shelton, Petitioner confessed to "doing deliveries of cocaine for about five and half months prior to this incident, after being Mirandized." App. 102. He testified that the indictment for trafficking in excess of 200 grams included the charge for trafficking in between 28 and 100 grams to which Petitioner pleaded guilty. App. 103. Attorney Shelton also

testified that the Solicitor's office would often offer persons with no record like Petitioner a plea deal that took the mandatory minimum sentence "off the table" in order to "move the case without going to trial . . . ." App. 103-04. On cross examination by PCR counsel, Attorney Shelton testified that the plea that Petitioner took was for less prison time than the original plea that was offered to him and that all paper discovery had been sent to plea counsel. App. 104-05. Attorney Shelton testified that, because he did not have the information in his file, he did not know "whether the audio recording was sent to [plea counsel] or not." App. 105. He stated that he did know that the audio recording was "in evidence."[4]

Petitioner testified on rebuttal that he never saw or heard the audio tape that Attorney Shelton testified about ("the C.I. audio tape"). He said that Attorney Bishop told him that he could not hear Petitioner's voice on the tape despite listening to the tape "five times." Petitioner also testified that he did not review the discovery or listen to the C.I. audio tape with plea counsel. App. 106-07. In an Order dated February 28, 2014, the PCR judge denied Petitioner's PCR Application in full, making the following findings of fact and conclusions of law:

## <u>FINDINGS OF FACT AND CONCLUSIONS OF LAW</u>

This Court has had the opportunity to review the record in its entirety and has heard the testimony and arguments presented at the PCR hearing. This Court has further had the opportunity to observe each witness who testified at the hearing, and to closely pass upon his or her credibility. This Court has weighed the testimony accordingly. Set forth below are the relevant findings of fact and conclusions of law as required by S.C. Code Ann. § 17-27-80 (2003).

The Applicant testified he met with the counsel several times prior to his guilty plea. He testified he never talked with counsel about the evidence. The

---

[4] It is clear from the context of Attorney Shelton's testimony and the record as a whole that when he referred to "in evidence," he was referring to evidence held by law enforcement, not to evidence formally admitted in a court proceeding.

Applicant testified counsel did not have any recorded conversations. He also testified counsel discussed the plea offer with him and told him if the offer was rejected he would get a mandatory twenty-five year sentence. The Applicant testified it was not his decision to plead guilty. He testified he recalled telling the plea judge that he wish [sic] to plead guilty and was indeed guilty, but he was coached by counsel. He testified further he told the Court he was not threatened or coerced to plead guilty and that his responses during this guilty plea were truthful.

The Applicant testified he pled guilty because his attorney told him everything was stacked against him. He testified his attorney coerced him to plead guilty. He testified he understood the process that the court has to go through to true bill an indictment. He testified he also understood that any problems with his indictment would be corrected by the State. He testified the lesser included offense of trafficking is possession with intent to distribute. The Applicant testified he also understood the offense that he was indicted for was worse than the offense be [sic] pled guilty to.

Benjamin Shelton, the assistant solicitor assigned to the Applicant's case, was also present and testified. He testified the case was initially handled by another solicitor and he took over the case after it was put on the trial roster. He testified the drug task force set up a controlled buy between the Applicant and a confidential informant. He testified the Applicant arrived at the scene of the controlled buy and got out of a car with a brown bag. Shelton testified the Applicant threw the bag under a vehicle when he saw police. He testified further the Applicant confessed after <u>Miranda</u>.

Shelton testified when he took over the Applicant's case he re-extended the plea offer that had expired from the previous assistant solicitor. He testified discovery materials were sent to plea counsel. Shelton testified he was not sure whether or not a copy of the audio of the controlled by [sic] was sent to the Applicant's attorney. He testified there was audio of the buy, but no video. He testified the State offered a plea to the lesser included offense with a negotiated ten year sentence or a cap of twelve years. Shelton testified the Applicant chose to plea to the lesser included offense with a cap of twelve years. He testified further he did not prepare the Applicant's indictment, but the Applicant was indicted under the general trafficking statute. He testified the indictment for 200g or more included the offense of 28-100g and the Applicant was allowed to plead guilty to two charges below what he was indicted for.

At the close of the Applicant's case, the Applicant moved for directed verdict. This Court denied the Applicant's motion. On January 13, 2014, the Applicant also filed a Motion for Summary Judgment. This Court finds the allegations raised in this amendment are wholly without merit. This Court finds

no testimony or argument was presented in support of these allegations. Viewing all evidence in the light most favorable to the State -- the non-moving party, this Court finds a genuine issue of material fact is present in this case and the Applicant is not entitled to judgment as a matter of law. This Court denies the Applicant's motion for summary judgment and denies and dismisses all allegations raised in the motion.

## Ineffective Assistance of Counsel

The Applicant alleges that he received ineffective assistance of counsel. As an initial matter, this Court finds the testimony of the Applicant was not credible. In a post-conviction relief action, the applicant has the burden of proving the allegations in the application. Rule 71.1(e), SCRCP; Butler v. State, 286 S.C. 441, 334 S.E.2d 813 (1985). Where ineffective assistance of counsel is alleged as a ground for relief, the applicant must prove that "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result." Strickland v. Washington, 466 U.S. 668 (1984); Butler, 286 S.C. 441, 334 S.E.2d 813.

The proper measure of performance is whether the attorney provided representation within the range of competence required in criminal cases. The courts presume that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. Strickland, 466 U.S. 668. The applicant must overcome this presumption in order to receive relief. Cherry v. State, 300 S.C. 115, 386 S.E.2d 624 (1989).

Courts use a two-pronged test to evaluate allegations of ineffective assistance of counsel. First, the applicant must prove that counsel's performance was deficient. Under this prong, attorney performance is measured by its "reasonableness under professional norms." Id. at 117, 386 S.E.2d at 625 (citing Strickland, 466 U.S. 668). Second, counsel's deficient performance must have prejudiced the applicant such that "There is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. Johnson v. State, 325 S.C. 182, 480 S.E.2d 733 (1997). When there has been a guilty plea, the applicant must prove that counsel's representation was below the standard of reasonableness and that, but for counsel's unprofessional errors, there is a reasonable probability that he would not have pled guilty and would have insisted on going to trial. Hill v. Lockhart, 474 U.S. 52, 58-59 (1985); Roscoe v. State, 345 S.C. 16, 20, 546 S.E.2d 417, 419 (2001).

To be knowing and voluntary, a plea must be entered with a full

understanding of the charges and the consequences of the plea. <u>Boykin v. Alabama</u>, 395 U.S. 238, 243-44 (1969); <u>Dover v. State</u>, 304 S.C. 433, 434, 405 S.E.2d 391, 392 (1991). When determining issues relating to guilty pleas, the court will consider the entire record, including the transcript of the guilty plea, and the evidence presented at the post-conviction relief hearing. <u>Anderson v. State</u>, 342 S.C. 54, 57, 535 S.E.2d 649, 657 (2000) (citing <u>Harres v. Leeke,</u> 282 S.C. 131, 318 S.E.2d 360 (1984)). When a defendant pleads guilty on the advice of counsel, the plea may only be attacked through a claim of ineffective assistance of counsel. <u>Roscoe v. State</u>, 345 S.C. 16, 20, 546 S.E.2d 417, 419 (2002) (citations omitted).

Regarding the Applicant's claims of ineffective assistance of counsel, this Court finds the Applicant has failed to meet his burden of proof. This Court finds that Applicant's attorney demonstrated the normal degree of skill, knowledge, professional judgment, and representation that are expected of an attorney who practices criminal law in South Carolina. <u>State v. Pendergrass</u>, 270 S.C. 1, 239 S.E.2d 750 (1977); <u>Strickland</u>, 466 U.S. at 668; <u>Butler</u>, 286 S.C. 441, 334 S.E.2d 813. This Court further finds counsel adequately conferred with the Applicant, conducted a proper investigation, and provided thoroughly [sic] representation. This Court finds that counsel's representation did not fall below an objective standard of reasonableness.

The Applicant alleges counsel was ineffective because he did not have the audio of the recorded conversations with the confidential informant. This Court finds this allegation is without merit. This Court finds the Applicant has failed to carry his burden of proving the audio was exculpatory. This Court also finds the Applicant has failed to show how counsel's alleged failure to obtain this audio resulted in any prejudice. This Court finds in light of State's case against the Applicant, it is unlikely the contents of the audio would have been beneficial to the Applicant's case. This Court finds that this allegation is without merit and the Applicant has failed to carry his burden of proving counsel's performance was ineffective in any way.

This Court finds that the Applicant's guilty plea was entered freely and voluntarily. The record reflects the Applicant was fully advised of the consequences of his guilty plea. The Applicant was advised by the court of the potential sentence he was facing (T. 2:17-23), his right to a jury trial (T. 6:14-19), his right to remain silent (T. 6:20-23), and his right to confront his accusers (T. 6:14-19). The Applicant told the Court he had not been promised anything or threatened to plead guilty. (T. 7:2-7). The Applicant told the Court he was not under the influence and did not suffer from any mental illnesses. (T. 6:2-13). This Court finds most telling the following statement by the Applicant to the court: "I accept my guilt as far as reading rights. I am guilty, your honor." (T. 14:7-9). This

Court finds the Applicant has failed to carry his burden of proving his guilty plea was involuntarily entered.

This Court finds the Circuit Court had proper subject matter jurisdiction to accept the Applicant's guilty plea. The Applicant alleges the plea court did not have subject matter jurisdiction over his case because he was not indicted for the offense that he pled guilty to. The record reflects the Applicant was indicted for trafficking cocaine in excess of 200 grams, but pled guilty to trafficking cocaine 28-100 grams. A circuit court has subject matter jurisdiction over a criminal offense if: (1) there has been an indictment that sufficiently states the offense; (2) there has been a waiver of indictment; or (3) the charge is a lesser-included offense of the crime charged in the indictment. Carter v. State, 329 S.C. 355, 495 S.E.2d 773 (1998). This Court finds since the Applicant pled to the lesser included offense of the charge he was indicted for the circuit court had subject matter jurisdiction to accept his guilty plea. This Court finds the Applicant failed to carry his burden of proving the plea court did not have subject matter jurisdiction over his case.

Accordingly, this Court finds the Applicant has failed to prove the first prong of the Strickland test, specifically that counsel failed to render reasonably effective assistance under prevailing professional norms. The Applicant failed to present specific and compelling evidence that counsel committed either errors or omissions while representing the Applicant. The Applicant failed to show that counsel's performance was deficient. Therefore, this Court need not address prejudice. Applicant's complaints concerning counsel's performance are without merit and are denied and dismissed. This Court finds the Applicant's guilty plea was entered freely and voluntarily. This Court also finds the Applicant failed to carry his burden of proving the plea court lacked subject matter jurisdiction to accept his guilty plea.

## All Other Allegations

As to any and all allegations that were raised in the application and not specifically addressed in this Order, this Court finds the Applicant failed to present any argument or testimony regarding such allegations. Accordingly, this Court finds the Applicant waived such allegations. Therefore, they are hereby denied and dismissed.

## CONCLUSION

Based on all the foregoing, this Court finds and concludes the Applicant has not established any constitutional violations or deprivations before or during his guilty plea and sentencing proceedings. Counsel was not deficient in any

> manner, nor was the Applicant prejudiced by counsel's representation. Therefore, this application for PCR must be denied and dismissed with prejudice.

App. 113-20. No post-hearing motions were filed. PCR counsel filed a Notice of Appeal on Petitioner's behalf on March 10, 2014. ECF No. 37-3. On October 29, 2014, Appellate Defender Carmen v. Ganjehsani filed a *Johnson* Petition for Writ of Certiorari on Petitioner's behalf. ECF No. 37-4.[5] The sole issue presented, quoted verbatim, was: "Whether the PCR court erred in finding that Petitioner's guilty plea was entered knowingly, voluntarily, and intelligently where Petitioner's plea counsel did not provide him with his discovery, including audio evidence, prior to his guilty plea and where Petitioner was unaware at the time he pled guilty that his voice could not be heard on the audio?" *Id.* at 3. Petitioner filed a pro se Brief in Support of Petition for Writ of Certiorari and, first, alleged that the plea judge acted without subject-matter jurisdiction in accepting his guilty plea because the indictment under which he was charged was "invalid." ECF No. 37-5 at 4. Petitioner's argument, citing to S.C. Code Ann. § 14-9-210, was based on his contention that the Berkeley County Grand Jury could not have issued a valid indictment on September 10, 2008 because "no court of General Sessions was convened on September 10, 2008 . . . ." *Id*. at 6-7. Under his second argument, Petitioner contended that the plea judge acted without jurisdiction in accepting his guilty plea because the crime to which he pleaded -- trafficking cocaine between 28 and 100 grams -- was not a lesser-included offense of the crime with which he was charged -- trafficking cocaine in excess of 200 grams. According to Petitioner, only possession with intent to distribute is a lesser-included offense of trafficking in

---

[5] *See Johnson v. State*, 364 S.E.2d 201 (S.C. 1988), addressing the procedures for counsel to follow when filing what they perceive to be meritless appeals in state PCR cases pursuant to *Anders v. California* and requesting to be relieved from representation.

cocaine. *Id*. at 12-13. Third, Petitioner contended he could not have entered a valid waiver of presentment of the charge to which he pleaded guilty because no indictment was ever obtained for the charge of trafficking in cocaine in the more than 28 grams but less than 100 grams category and Petitioner's signature on the sentencing sheet did not constitute a valid waiver. *Id*. at 18-20. As his fourth argument, Petitioner asserted that even though differences in amount of drugs trafficked could allow for graduated sentencing under the trafficking statute, that fact did not make trafficking in a lesser amount a lesser-included offense of trafficking in a greater amount. Petitioner contended that, in absence of a separate indictment, the plea judge acted without subject-matter jurisdiction in accepting the guilty plea to the uncharged crime. *Id*. at 21-22. Fifth, Petitioner asserted that the State was precluded from changing the amount of cocaine that Petitioner was convicted of trafficking because the change in amount was a "material variance" in the indictment that prevented the plea judge from having jurisdiction to try Petitioner on the charge to which he pleaded guilty. *Id*. at 24. Under "Argument VI," Petitioner reiterated his assertion that Berkeley County General Sessions Court did not have a term that covered September 10, 2008, and, therefore, the indictment in his case was "void." *Id*. at 28. Petitioner then raised a claim of ineffective assistance of plea counsel, asserting that plea counsel failed to investigate the State's case against him, failed to prove his innocence, and relied on hearsay evidence. He asserted that plea counsel allowed him to be convicted "on false and invalid documents and fear of corrupt police officers." *Id*. at 29. In his "Argument I" after the ineffective-assistance claim was raised, Petitioner asserted ineffectiveness for failure to advise him to appeal and failing to perfect a direct appeal. *Id*. at 30. Under "Argument II," Petitioner contended that plea counsel was ineffective for failing to allow him to view the State's evidence

14

against him, failing to legally contest the State's evidence based on unreliability of the C.I., for testifying about recordings that were not actually made, and for allowing Petitioner to plead to charges produced by corrupt police activities without challenging those activities. *Id.* at 32-33. Finally, Petitioner contended that the PCR judge's dismissal order was invalid because it did not contain findings of fact and conclusions of law on "every issue presented" and only addressed the claim of ineffective assistance of counsel. Petitioner asserted that PCR counsel was ineffective and refused to file a Rule 59(e) motion on his behalf even though he was requested to do so. *Id.* at 38-41.

On March 4, 2015, the South Carolina Supreme Court denied the petition for certiorari without making specific findings on any of Petitioner's issues and issued the Remittitur on March 20, 2015. ECF Nos. 37-6, 37-7. This habeas Petition followed on May 26, 2015. ECF Nos. 1, 1-2.

II.    Discussion

A.    Federal Habeas Issues

Petitioner raises the following issues in his federal Petition for a Writ of Habeas Corpus, quoted verbatim:

**GROUND ONE**: Ineffective Assistance of Counsel (After discovered evidence)
. . . .

Record show that exculpatory evidence exist that would show the Petitioner is innocent of said charge, but this evidence was withheld from him by his Attorney and Prosecution. Record show the Petitioner did not discover the existance [sic] of the exculpatory audio tape at the alleged "buy" until his first appointed P.C.R. attorney made it aware to him Petitioner, who confirmed to Petitioner he never heard Petitioner on the State's evidence.
. . . .

15

**GROUND TWO**: Prosecution misconduct (Brady violation) (After discovered evidence)

    . . . .

Prosecution is in possession of an audio tape that supposedly has Petitioner's alleged involvement in a Drug trafficking Buy that wasn't included in the discovery of this plea/trial attorney, never been inspected by the Petitioner, and Petitioner has the right to inspect any and all information regarding his guilt or punishment as well as his exoneration.

    . . . .

**GROUND THREE**: Involuntary Plea (After discovered evidence).

    . . . .

Petitioner's Guilty Plea was Given without the knowlege [sic] of an audio tape or exculpatory evidence in the possession of the prosecutor that would show his innocence [sic]. Had the prosecutor handed over this information as the law instructs Petitioner wouldn't have plead Guilty but rather chosen to go to trial.

ECF No. 1 at 5-8. In a supplemental pleading, Petitioner added what appear to be fourth and fifth

Grounds for relief:

[Ground Four] <u>Lack of Probable Cause</u>- Plea/Trial counsel did not inform petitioner of all the facts before advising him to plea. Counsel did not inform petitioner that he could move with a pre-trial motion to suppress alleged evidence and litigate a Fourth Amendment claim that have merits. Affiants affadavit [sic] submitted in support of arrest warrant is defective as it lacked probable cause. The affadavit [sic] did not establish the involvement of a confidential informant, did not contain a sworn statement of reliability of the confidential informant no sworn statement from the confidential informant and did not disclose the alleged facts and circumstances that was part of the probable cause to arrest petitioner.[6]

    . . . .

---

[6] Although this Ground is not expressly stated as a claim of ineffective assistance of trial counsel, review of the argument portion of this supplemental pleading in context discloses that Petitioner is, in fact, alleging that plea counsel was ineffective for failing to move to suppress the evidence against Petitioner on the basis of lack of probable cause for arrest. ECF No. 1-3 at 10 ("but for counsel's error in failing to move on a pre-trial motion to suppress alleged evidence . . . the petitioner would not have pled guilty but would have insisted on going to trial.").

16

[Ground Five] Prosecutor Misconduct -- Due Process Violation

Prosecution (Solicitor) violated duty not to introduce false evidence or use false testimony to obtain conviction. Record show the Solicitor when asked to state facts introduces evidence of audio recording and contents of alleged audio to establish Petitioners involvement and guilt in alleged drug "buy". Solicitor knew at the time of testimony no such evidence existed and his testimony was perjured testimony used to convict Petitioner.

ECF No. 1-3 at 4, 11.

B.      Standard for Summary Judgment

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry

of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319, 322 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990).

        C.        Habeas Corpus Standard of Review

        1.        Generally

Because Petitioner filed his Petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997); *Breard v. Pruett*, 134 F.3d 615, 618 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable application of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d)(1)(2); *see Williams v. Taylor*, 529 U.S. 362, 398 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 410.

        a.        Deference to State Court Decisions

18

Courts afford deference to state courts' resolutions of the habeas claims of state prisoners. *See Bell v. Cone*, 543 U.S. 447, 455 (2005). The Supreme Court has provided further guidance regarding the deference due to state-court decisions. *Harrington v. Richter*, 562 U.S. 86 (2011); *Cullen v. Pinholster*, 563 U.S. 170 (2011). To obtain habeas relief from a federal court, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 102. "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. In *Harrington*, the Court further stated: "If this standard is difficult to meet, that is because it was meant to be." *Id.*; *see Richardson v. Branker*, 668 F.3d 128, 137-44 (4th Cir. 2012) (quoting *Harrington* extensively and reversing district court's grant of writ based on his ineffective assistance of counsel claims).

In interpreting § 2254(d)(1) and discussing the federal courts' role in reviewing legal determinations made by state courts, the United States Supreme Court held as follows:

> [A] federal court may grant a writ of habeas corpus if the relevant state-court decision was either (1) "contrary to . . . [clearly] established Federal law as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."

*Williams v. Taylor*, 529 U.S. 362, 404-05 (2000) (quoting from § 2254(d)(1)). "Clearly established Federal law in § 2254(d)(1) refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Carey v. Musladin*, 549 U.S. 70, 74 (2006) (quoting *Williams*, 529 U.S. at 412). In considering whether a state-court decision is "contrary to" clearly established federal law, the federal court may not

grant relief unless the state court arrived at a conclusion opposite to that reached by the Supreme Court on a legal question, the state court decided the case differently than the Court has on facts that are materially indistinguishable, or if the state court "identifie[d] the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applie[d] that principle to the facts of the prisoner's case." *Williams*, 529 U.S. 362, 405-13. The "unreasonable application" portion of § 2254(d)(1) "requires the state court decision to be more than incorrect or erroneous[,]" it "must be objectively unreasonable," which is a higher threshold. *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (internal citation omitted).

Section 2254(e)(1) requires the federal court give a presumption of correctness to state-court factual determinations and provides that a petitioner can only rebut such a presumption by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Accordingly, a habeas petitioner is entitled to relief under § 2254(d)(2), only if he can prove, by clear and convincing evidence, that the state court unreasonably determined the facts in light of the evidence presented in state court.

b.     Ineffective Assistance of Counsel

The Sixth Amendment provides a criminal defendant the right to effective assistance of counsel in a criminal trial and first appeal of right. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court announced a two-part test for adjudicating ineffective assistance of counsel claims. First, a petitioner must show that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. *Id*. at 687. Second, the petitioner must show that this deficiency prejudiced the defense. *Id*. at 694. The United States Supreme Court's 2011 decisions cited previously elaborate on the interplay between *Strickland* and § 2254, noting the standards are "both highly deferential," and "when the two apply in tandem,

20

review is doubly so." *Harrington*, 562 U.S. at 105 (internal quotation marks omitted); *Pinholster*, 563 U.S. at 190.

Further, in *Pinholster*, the Court held for the first time that the federal court's habeas review under § 2254(d)(1) is limited to the record before the state court that adjudicated the claim on the merits. *Pinholster*, 563 U.S. at 181. The Court explained that "review under § 2254(d)(1) focuses on what a state court knew and did." *Id*. at 182. In the *Pinholster* case, the district court had conducted an evidentiary hearing and considered new evidence in connection with its review and granting of the petitioner's writ based on a finding of ineffective assistance of counsel. *Id*. at 179. In an en banc decision, the Ninth Circuit Court of Appeals affirmed the district court's grant of the writ. *Id*. at 180. The United States Supreme Court granted certiorari and reversed the Ninth Circuit, finding that the district court should not have considered additional evidence that had not been available to the state courts. 563 U.S. at 181. Because the federal habeas scheme "leaves primary responsibility with the state courts," and "requires that prisoners ordinarily must exhaust state remedies," the Court held that to permit new evidence to be presented in a federal habeas court "would be contrary to that purpose." *Id*. at 182 (internal citation and quotation marks omitted).

When a petitioner raises in a § 2254 habeas petition an ineffective-assistance-of-counsel claim that was denied on the merits by a state court, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable[,]" not "whether defense counsel's performance fell below *Strickland's* standard." *Harrington*, 562 U.S. at 101. "For purposes of § 2254(d)(1), 'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'" *Id*. (citing *Williams*, 529 U.S. at 410) (emphasis in

original). "A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." 562 U.S. at 101.

2.     Procedural Bar

Federal law establishes this court's jurisdiction over habeas corpus petitions. 28 U.S.C. § 2254. This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States[,]" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim. *Id*. The separate, but related, theories of exhaustion and procedural bypass operate in a similar manner to require that a habeas petitioner first submit his claims for relief to the state courts. A habeas-corpus petition filed in this court before the petitioner has appropriately exhausted available state-court remedies or has otherwise defaulted seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

a.     Exhaustion

Section 2254 contains the requirement of exhausting state-court remedies and provides as follows:

> (b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that –
>
>   (A) the applicant has exhausted the remedies available in the courts of the State; or
>
>   (B)(i) there is an absence of available State corrective process; or
>
>     (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
>
> (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in

22

the courts of the State.

(3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254. The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state-court remedies. 28 U.S.C. § 2254(b)(1)(A). "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court." *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997), *abrogated on other grounds by United States v. Barnette*, 644 F.3d 192 (4th Cir. 2011). Thus, a federal court may consider only those issues that have been properly presented to the highest state courts with jurisdiction to decide them.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal; or (2) by filing a PCR application. State law requires that all grounds be stated in the direct appeal or PCR application. SCACR 203; *see* S.C. Code Ann. §§ 17-27-10 through 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767, 770 (S.C. 1976). If the PCR court fails to address a claim as is required by S.C. Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e) of the South Carolina Rules of Civil Procedure. Failure to do so will result in the application of a procedural bar by the South Carolina Supreme Court. *Marlar v. State*, 653 S.E.2d 266, 267 (S.C. 2007). Strict time deadlines govern direct appeals and the filing of a PCR application in South Carolina courts. A PCR application must be filed within one year of judgment, or, if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

Furthermore, in filing a petition for habeas relief in the federal court, a petitioner may present only those issues that were presented to the South Carolina Supreme Court or to the South Carolina Court of Appeals. *See State v. McKennedy*, 559 S.E.2d 850, 853 (S.C. 2002) (holding "that in all appeals from criminal convictions or post-conviction relief matters, a litigant shall not be required to petition for rehearing and certiorari following an adverse decision of the Court of Appeals in order to be deemed to have exhausted all available state remedies respecting a claim of error.") (quoting *In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief*, 471 S.E.2d 454, 454 (S.C. 1990)).

b.     Procedural Bypass

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner who seeks habeas-corpus relief as to an issue failed to raise that issue at the appropriate time in state court and has no further means of bringing that issue before the state courts. In such a situation, the person has defaulted his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition. Procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings if the state has procedural rules that bar its courts from considering claims not raised in a timely fashion. *Id.*

The Supreme Court of South Carolina will refuse to consider claims raised in a second appeal that could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR application and the deadlines for filing have passed, he is barred from proceeding in state court. If the state courts have applied a procedural bar to a claim because of

an earlier default in the state courts, the federal court honors that bar. As the United States

Supreme Court explains:

> [state procedural rules promote] not only the accuracy and efficiency of judicial
> decisions, but also the finality of those decisions, by forcing the defendant to
> litigate all of his claims together, as quickly after trial as the docket will allow,
> and while the attention of the appellate court is focused on his case.

*Reed v. Ross*, 468 U.S. 1, 10-11 (1984). However, if a federal habeas petitioner can show both

(1) "'cause' for noncompliance with the state rule[,]" and (2) "'actual prejudice resulting from

the alleged constitutional violation[,]'" the federal court may consider the claim. *Smith v.

Murray*, 477 U.S. at 533 (quoting *Wainwright v. Sykes*, 433 U.S. 23, 84 (1977)). When a

petitioner has failed to comply with state procedural requirements and cannot make the required

showing of cause and prejudice, federal courts generally decline to hear the claim. *Murray v.

Carrier*, 477 U.S. 478, 496 (1986).

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by

state rules from returning to state court to raise the issue, he has procedurally defaulted his

opportunity for relief in the state courts and in federal court. A federal court is barred from

considering the filed claim (absent a showing of cause and actual prejudice). In such an instance,

the exhaustion requirement is technically met and the rules of procedural bar apply. *See

Matthews v. Evatt*, 105 F.3d at 915 (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991),

*Teague v. Lane*, 489 U.S. 288, 297-98 (1989), *George v. Angelone*, 100 F.3d 353, 363 (4th Cir.

1996), and *Bassette v. Thompson*, 915 F.2d 932, 937 (4th Cir. 1990)). Procedural default is an

affirmative defense that is waived if not raised by respondents. *Gray v. Netherland*, 518 U.S.

152, 165-66 (1996). To overcome a respondent's contention, it is a petitioner's burden to raise

25

cause and prejudice or actual innocence. If not raised by the petitioner, the court need not consider the defaulted claim. *See Kornahrens v. Evatt*, 66 F.3d 1350, 1362-63 (4th Cir. 1995).

### c.     Cause and Actual Prejudice

Because the requirement of exhaustion is not jurisdictional, this court may consider claims that have not been presented to the Supreme Court of South Carolina in limited circumstances in which a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred. *Murray*, 477 U.S. at 495-96; *see Martinez v. Ryan*, 132 S. Ct. 1309, 1316 (2012) ("A prisoner may obtain federal review by showing cause for the default and prejudice from a violation of federal law.") (quoting *Coleman*, 501 U.S. at 750). A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor that hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. *Murray*, 477 U.S. at 495-96. Absent a showing of cause, the court is not required to consider actual prejudice. *Turner v. Jabe*, 58 F.3d 924, 931 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. *Murray*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error. Pursuant to *Martinez v. Ryan*, an error by a prisoner's post-conviction counsel during his initial state collateral review proceeding can qualify as "cause" to excuse the procedural default of a claim of trial counsel ineffectiveness claim if: (1) state law required the prisoner to wait until post-conviction review to raise *Strickland* claims; (2) the prisoner's underlying *Strickland* claim is "substantial"; and (3) the prisoner can establish that his post-conviction counsel was ineffective under the *Strickland* standard. 132 S. Ct. at 1318-19.

3.      Claims of Ineffective Assistance of Counsel

To prevail on a claim of ineffective assistance of counsel, a petitioner must show (1) that his trial counsel's performance fell below an objective standard of reasonableness, and (2) that a reasonable probability exists that but for counsel's error, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. Petitioner bears the burden of proving an error and prejudice in his ineffective-assistance-of-counsel claim. *Id*.

III.      Analysis

A.      Rule 11 Sanctions

Citing to Federal Rule of Civil Procedure 11, Petitioner contends that Respondent's Motion for Summary Judgment "should be voided as it contains inaccurate or false information which cannot be supported." ECF No. 53 at 2. Petitioner refers to the opening portion of Respondent's Return and Memorandum in Support of the Motion for Summary Judgment wherein Respondent states that Petitioner was convicted of a crime of which he was not convicted. ECF No. 37 at 1 (stating that Petitioner is "confined in . . . Allendale Correctional Institution . . . as a result of his . . . conviction for criminal sexual conduct with a minor in the second degree."). Respondent provides a corrected "procedural history" paragraph with all correct information in it. ECF No. 60 at 2. Respondent responds to Petitioner's request for sanctions, acknowledging the original misstatement of facts, but asserting that no sanctions are required because the factual errors were the result of "inadvertent and unintentional error." *Id*. at 3. Having reviewed the parties' submissions, the undersigned finds that no sanctions are warranted because it is obvious that the misstated facts were included in Respondent's pleading by mistake and inadvertently. Also, Respondent did not refer to or rely on the misstated facts

anywhere in the remainder of his submissions. Under such circumstances, Rule 11 sanctions are inappropriate. *See In re Bress*, 562 F.3d 284, 288 (4th Cir. 2009). Accordingly, Petitioner's request for entry of Rule 11 sanctions is denied.

      B.      Procedurally Barred Grounds Two, Four, and Five

      1.      The Parties' Contentions

Respondent contends that Petitioner's claims that the Berkeley County Solicitor's Office committed a *Brady* violation[7] with respect to the C.I. audio tape and that plea counsel was ineffective for failing to move to suppress evidence seized pursuant to the arrest warrant in his case are procedurally barred because they were not raised and argued during the PCR hearing or addressed by the PCR judge in her final order. ECF No. 37 at 26, 31. Respondent further contends that Petitioner's reliance on *Martinez v. Ryan* is unavailing because Petitioner's Ground Two is not a claim of ineffective assistance of plea counsel and Petitioner cannot show the required cause or prejudice to relieve the default because Petitioner presents no evidence showing a *Brady* violation. *Id*. at 27-29. Respondent asserts that *Martinez* does not provide cause for the procedural default of Petitioner's Ground Four because Petitioner cannot show that his PCR counsel was ineffective where the underlying claim of ineffective assistance of plea counsel

---

[7] *Brady v. Maryland*, 373 U.S. 83, 87 (1963) (suppression by the prosecution of evidence favorable to an accused violates due process where the evidence is material either to guilt or to punishment). It is unsettled whether a habeas petitioner who voluntarily pleaded guilty can properly raise a *Brady* claim. *See McBride v. Bryant*, No. 8:12-CV-2895-RMG, 2013 WL 4500050, at *3-4 (D.S.C. Aug. 21, 2013) (§ 2254 habeas case discussing existing authority and citing to *United States v. Ruiz,* 536 U.S. 622, 625 (2002) (guilty plea not invalidated by prosecutor's failure to disclose inculpatory evidence) and to *United States v. Moussaoui*, 591 F.3d 263, 285 (4th Cir. 2010) (direct appeal from guilty plea; recognizing that Supreme Court has not addressed the issue, but finding that appellant knowingly waived his right to receive exculpatory evidence before the guilty plea)).

28

is not substantial and Petitioner was not prejudiced by plea counsel's failure to move to suppress evidence in light of the contents of the transcript of the plea hearing, the lack of proof submitted on the issue, and applicable law providing that an indictment is conclusive on the issue of probable cause. *Id*. at 32-42. Respondent also contends that Petitioner cannot show the required cause and prejudice for his default of the claim asserted in Ground Five because *Martinez* is inapplicable where the underlying claim is not one of ineffective assistance of trial counsel. *Id*. at 44. Respondent contends that Petitioner cannot rely on ineffective assistance of plea counsel to show cause because that claim was not raised in state court and cannot show prejudice from the State's references to the C.I. audio tape during the plea hearing in absence of proof of the use of perjured testimony. *Id*. at 45.

Petitioner responds that *Martinez v. Ryan* applies in this case to Ground Two because default of this Ground was caused by knowing and intentional PCR counsel error and the record shows that the Solicitor "failed to disclose and suppressed exculpatory evidence . . . ." ECF No. 53 at 11, 13.[8] As to his Ground Four, Petitioner responds that PCR counsel knowingly

---

[8] In connection with his Ground Two, Petitioner prays for "this court [to] inspect this evidence [the C.I. audio tape]. . . , ECF No. 53 at 15; *see* R. 7, Rules Governing § 2254 Cases in the Dist. Cts.(governing record expansion in federal habeas matters). Petitioner did not introduce it into evidence before the PCR court and, as a result, the C.I. audio tape is not a part of the record before this court. Additionally, although he bases his entire assertion that the tape is "exculpatory" on statements allegedly made to him by Attorney Bishop, his initial PCR counsel, he did not present live testimony or an affidavit from Bishop at the PCR hearing and he does not attempt to introduce such testimony before this court. Respondent argues against the requested expansion of the record, equating a request for record expansion to a request for an evidentiary hearing and citing to case law from other Circuits that also equate the habeas rule's standards for record expansion to the § 2254(e)(2) "due diligence" standards for evidentiary hearings. ECF No. 37 at 39 (citing *Owens v. Frank*, 394 F.3d 490, 498-99 (7th Cir. 2005); *Cooper-Smith v. Palmateer*, 397 F.3d 1236, 1241 (9th Cir. 2005)). Here, other than his claims of PCR counsel ineffectiveness and a conclusory use of the term "after discovered evidence" in his statement of

disregarded his requests that this issue be raised before the PCR judge. *Id*. at 20.[9] Petitioner

asserts that plea counsel was ineffective and his plea was, therefore, involuntary because plea

counsel did not file a motion to suppress the evidence in his case on the basis of lack of a

showing of C. I. reliability in the affidavit for the arrest warrant. *Id*. at 21-22. Petitioner contends

that the indictment in his case was issued on a date during which the General Sessions court was

not in session and, therefore, did not conclusively determine the issue of probable cause for his

arrest. *Id*. at 24-25. As to Ground Five, Petitioner does not address Respondent's contention of

procedural bypass, but contends that the record shows that the State had access to the C.I. audio

tape and "listened to it." ECF No. 53 at 26. Petitioner asserts that the State knew the C.I. audio

tape "cleared petitioner of involvement and guilt in the drug buy" and that its statement of the

facts to the plea court constituted perjury. *Id*. at 28.

2.     Applicable Law

---

his first three Grounds in his Petition, Petitioner provides no explanation of his failure to
introduce either the disputed audio tape or Attorney Bishop's testimony into evidence before the
PCR judge. However, blaming the lack of proof on attorney ineffectiveness does not show that
Petitioner acted with due diligence because the United States Supreme Court has held that
"[a]ttorney negligence . . . is chargeable to the client and precludes relief unless the conditions of
§ 2254(e)(2) are satisfied." *Holland v. Jackson*, 542 U.S. 649, 653 (2004). Accordingly, the
undersigned finds that Petitioner has not made the required showing of due diligence for
expansion of the record before this court. Under the circumstances presented in this case, this
court's review should be limited to the record made in the state courts.

[9] With regard to his Ground Four, Petitioner seeks "expansion of the record to include the
arrest warrant." ECF No. 53 at 20. A copy of the warrant is attached Petitioner's Motion for
Summary Judgment. ECF No. 52-2 at 2. Because Petitioner has not shown the required due-
diligence under § 2254(e)(2)(A)(ii) for his failure to introduce the arrest warrant before the PCR
judge, the undersigned finds that the record should not be expanded in this court. *See supra* note
8. Accordingly, this Report is based on review of the record made before the state courts.

If a state requires a prisoner to raise ineffective assistance of trial counsel in a collateral proceeding, the *Martinez* Court determined a prisoner may establish cause for a default of a claim of ineffective assistance of trial/plea counsel in the following two circumstances:

> [1] where the state courts did not appoint counsel in the initial-review collateral proceeding for a claim of ineffective assistance at trial [and 2] where appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of *Strickland v. Washington,* 466 U.S. 668, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984). To overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit.

132 S. Ct. at 1318; *see LaRoche v. Dunlap*, No. 4:14-CV-00222-JMC, 2015 WL 1298473, at *11 (D.S.C. Mar. 23, 2015) (petitioner did not establish a "substantial" ineffective assistance of trial counsel claim and "failed to meet the requirements of *Martinez* to show that his PCR counsel was ineffective"), *appeal dismissed*, 607 F. App'x 323 (4th Cir. 2015); *see also Sexton v. Cozner*, 679 F.3d 1150, 1161 (9th Cir. 2012) ("Because [the petitioner] has not shown that [PCR counsel] was ineffective, he has not shown cause to excuse his procedural default, and therefore, has not shown that his case warrants remand under *Martinez*."). Legal counsel is not required to bring every possible claim before a court to avoid being found ineffective, *see Jones v. Barnes*, 463 U.S. 745 (1983) (finding that counsel has no constitutional duty to raise every non-frivolous claim on appeal).

The Fourth Circuit has held that counsel must conduct a basic factual and legal investigation to determine if a defense is available or can be developed. *Sneed v. Smith,* 670 F.2d 1348, 1352 (4th Cir. 1982). "At the heart of effective representation is the independent duty to investigate and prepare." *Stevens v. Johnson*, 575 F. Supp. 881, 885 (E.D.N.C. 1983) (citing

*Goodwin v. Balkcom,* 684 F.2d 794, 805 (5th Cir. 1982)). "Informed evaluation of potential defenses to criminal charges and meaningful discussion with one's client of the realities of his case are cornerstones of effective assistance of counsel." *Id.* (citing *Gaines v. Hopper,* 575 F.2d 1147, 1149-50 (5th Cir. 1978)). However, a petitioner who merely alleges, in conclusory and general terms, that counsel's performance was inadequate without offering proof of what an adequate representation would have yielded does not properly present an issue that merits habeas corpus review. *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) ("a petitioner is not entitled to an evidentiary hearing, however, when his claims are merely conclusory allegations unsupported by specifics or contentions that in the face of the record are wholly incredible") (internal quotations omitted) (emphasis in original); *see Ruark v. Gunter*, 958 F.2d 318, 319 (10th Cir. 1992) ("naked allegations" are not cognizable under federal habeas corpus statutes); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) ("conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be granted"). The Fourth Circuit and this court have found that a habeas petitioner does not sustain his burden of proof on an ineffective-assistance claim for failure to locate or call witnesses if the alleged witness is not called to provide testimony to the state court considering the claim. *E.g.*, *Bassette v. Thompson*, 915 F.2d 932, 939-41 (4th Cir. 1990); *Joe v. Padula*, No. 9:11-cv-1090-TLW-BM, 2012 WL 2339634, at *7 (D.S.C. Mar. 1, 2012), *report and recommendation adopted*, 2012 WL 2325662 (D.S.C. June 19, 2012); *see also Bannister v. State*, 509 S.E.2d 807, 809 (S.C. 1998) ("This Court has repeatedly held a PCR applicant must produce the testimony of a favorable witness or otherwise offer the testimony in accordance with the rules of evidence at the PCR hearing in order to establish prejudice from the witness' failure to testify at trial."); *Glover v.*

32

*State*, 458 S.E.2d 539, 540 (S.C. 1995) ("[B]ecause the other witnesses respondent claimed could have provided an alibi defense did not testify at the PCR hearing, respondent could not establish any prejudice from counsel's failure to contact these witnesses."); *Clark v. State*, 434 S.E.2d 266, 267-68 (S.C. 1993) (pure conjecture as to what a witness' testimony would have been is not sufficient to show a reasonable probability the result at trial would have been different); *Underwood v. State*, 425 S.E.2d 20, 22 (S.C. 1992) (prejudice from trial counsel's failure to interview or call witnesses could not be shown where witnesses did not testify at PCR hearing). Finally, where a party fails to respond to the opposing party's argument in support of the opposing party's motion for summary judgment, the party who fails to respond will be found to have conceded to that argument. *See Petrucelli v. Dep't of Justice*, No. 11-1780 (RBW), 2014 WL 2919285, at *7 (D.D.C. June 27, 2014 (prisoner case; citing *Maydak v. DOJ*, 579 F. Supp. 2d 105, 107) (D.D.C. 2008); *see also Satcher v. Univ. of Ark. at Pine Bluff Bd. of Trs.*, 558 F.3d 731, 735 (8th Cir. 2009) ("[F]ailure to oppose a basis for summary judgment constitutes waiver of that argument.").

### 3.     Discussion

#### a.     Ground Two: Prosecution Misconduct (*Brady* violation)

Petitioner's Ground Two, alleging ineffective assistance of counsel for failure to discover and investigate the C.I. audio tape allegedly containing telephone conversations between Petitioner and a C.I., was procedurally defaulted when Petitioner failed to pursue the claim at the PCR hearing. However, Petitioner maintains that *Martinez* establishes "cause" for the default and the fact that he was convicted and sentenced as prejudice. To overcome the default, *Martinez* requires Petitioner to demonstrate that the underlying claim of ineffective assistance of plea

33

counsel is substantial or has merit. *See* 132 S. Ct. at 1318. Even if Petitioner can successfully prove that his plea counsel acted unreasonably, he still must prove that the unreasonable performance was prejudicial. Here, Petitioner offers no such proof other than to say, without any supporting evidence, that plea counsel should have reviewed the C.I. audio tape in order to discover that it was exculpatory. Although Petitioner says that the record shows that plea counsel did not receive and review the audio tape and that it was "suppressed" by the State, ECF No. 53 at 11, he does not provide a specific page citation where those alleged facts may be found in the record, and the undersigned's review of the limited testimony from the now-deceased attorney does not support that assertion. In fact, plea counsel testified that he had "investigated this matter fully on [his] client's behalf" and that he "shared the results" of that investigation with Petitioner. Plea counsel did not make any reference to any missing discovery material and Petitioner told the plea judge that he was "satisfied" with his lawyer and did not have "any complaints about the way [plea counsel] . . . handled [his] case." App. 4. The only testimony in the record on the topic, other than Petitioner's own, self-serving assertions, is that of the attorney who represented the State at the plea hearing. Attorney Shelton told the PCR judge that he was not a member of the Solicitor's office at the time that the State provided discovery material in Petitioner's case, but that his review of the file indicated that "all paper discovery was sent to [plea counsel]." App. 105. Shelton indicated that the audio tape was "in evidence," but he stated "I do not know, I don't have it with this file whether the audio recording was sent to [plea counsel] or not . . . ." *Id*. Although Petitioner asserts that it does, this equivocal statement does not show that plea counsel never reviewed the audio tape. Instead, it only shows that this particular attorney did not know whether plea counsel reviewed it. Petitioner did not present any testimony from any court

participant who would have had personal knowledge of whether the C.I. audio tape was or was not provided to plea counsel and appears to rely only on his own testimony to that effect and his own unreasonable inferences from Attorney Shelton's testimony. The petitioner's testimony alone is not adequate to prove ineffectiveness. *See Ruark v. Gunter*, 958 F.2d 318, 319 (10th Cir. 1992) ("naked allegations" are not cognizable under federal habeas corpus statutes); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir.1991) ("conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be granted"). In absence of other competent evidence, Petitioner has failed to show that plea counsel did not review the C.I. audio tape or that plea counsel rendered ineffective assistance with respect to his investigation and advice to plead guilty.

Moreover, regardless of whether plea counsel reviewed the C.I. audio tape, Petitioner has also failed to show prejudice from any failure to review it because there is no evidence in the record, other than Petitioner's self-serving testimony, that the tape was exculpatory. Although Petitioner continuously asserts that the audio tape was exculpatory based on an alleged discussion with Attorney Bishop, App. 86; ECF No. 53 at 11, 13-15, he did not present either the C.I. audio tape itself or the testimony or an affidavit from Attorney Bishop in connection with his PCR application and hearing. In any event, the tape was not the only evidence that the State had of Petitioner's guilt. Attorney Shelton's testimony at the plea hearing and at the PCR hearing shows that law enforcement personally observed Petitioner's activities, seized a considerable amount of drugs, and obtained a confession from Petitioner. Thus, in absence of a showing of ineffective representation and prejudice, Petitioner fails to overcome the presumption of effectiveness that applies to habeas review of the quality of legal representation. Without a

showing of a substantial underlying claim of ineffectiveness of plea counsel and resulting ineffectiveness of PCR counsel, Petitioner fails to show cause for procedural default through reliance on *Martinez*. Furthermore, Petitioner has not argued and cannot show that this court's refusal to consider the merits of his defaulted Ground Two would result in a miscarriage of justice because he does not claim to be actually innocent of the charge to which he pleaded guilty and there is nothing in the record showing anything "truly extraordinary" about Petitioner's claims. *See Bousley v. United States*, 523 U.S. 614, 623 (1998); *Schlup v. Delo*, 513 U.S. 298, 327 (1995). Accordingly, because it is procedurally barred, it is recommended that Respondent's Motion for Summary Judgment be granted and Petitioner's Motion for Summary Judgment be denied as to Petitioner's Ground Two.

b.     Ground Four: Lack of Probable Cause

Petitioner's Ground Four, liberally construed, asserts that his guilty plea was involuntary because plea counsel was ineffective for failing to move to suppress evidence seized pursuant to the arrest warrant in his case on the basis of an inadequate probable-cause affidavit. As to this Ground, Petitioner also asserts that *Martinez* provides the required cause to excuse its procedural default due to ineffective assistance of PCR counsel. Initially, this court cannot determine whether Petitioner's assertions about the warrant affidavit have any facial merit because the warrant is not part of the record before the court. *See supra* note 9. Additionally, as pointed out by Respondent, this claim was procedurally defaulted when it was not presented to the PCR judge or, if presented but not addressed by the PCR judge, no Rule 59(e) motion was filed to bring the issue to the judge's attention and obtain a ruling on it. *See* John H. Blume & Emily C. Paavola, *A Reintroduction: Survival Skills for Post-Conviction Practice in South Carolina*, 4

Charleston L. Rev. 223, 270 (2010) ("a Rule 59(e) motion may also be used when the order contains an erroneous finding of fact, a misapplication of law, or if there has been intervening authority relevant to an issue in the case"); *cf. Marlar v. State*, 653 S.E.2d 266, 267 (S.C. 2007) (if PCR court fails to address a particular claim, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e) of the South Carolina Rules of Civil Procedure to preserve the issue for review).

*Martinez* will only relieve a petitioner of a procedural default where there is proof that PCR counsel was, in fact, ineffective for failing to raise the specific issue and, in light of the presumption of effectiveness, Petitioner has the burden of proving that his claim of plea counsel ineffectiveness was substantial. Petitioner cannot sustain that burden on the record before this court because he cannot show that a reasonable attorney in South Carolina would have moved to suppress the evidence based on a claim that probable cause did not exist for the arrest warrant. This is true because applicable law shows that in South Carolina a grand jury's indictment is conclusive of probable cause for the arrest and Petitioner was clearly indicted in this case, albeit after his arrest. Review of the indictment in the record of this case, App. 121-22, shows that it is facially valid and that is all that is required under applicable law for the indictment to be conclusive on the issue of probable cause. *See Durham v. Horner*, 690 F.3d 183, 189 (4th Cir. 2012) (a facially valid indictment conclusively determines the existence of probable cause); *see also Thompson v. McFadden*, No. 5:15-1568-TMC-KDW, 2016 WL 1729651, at *13 (April 8, 2016) (no proof of ineffectiveness for failure to challenge indictment which was regular on its face), *report and recommendation adopted,* 2016 WL 1721067 (D.S.C. April 29, 2016). In any event, Petitioner's challenges to the validity of the grand jury indictment in his case involves

only issues of state law and are not for this court to consider. *See Wright v. Angelone*, 151 F.3d 151, 157 (4th Cir. 1998) (holding that petitioner's claim that a Virginia circuit court lacked jurisdiction over two counts in his indictment, the Fourth Circuit determined that his claim, "when pared down to its core, rests solely upon an interpretation of Virginia's case law and statutes, it is simply not cognizable on federal habeas review"); *Wills v. Egeler*, 532 F.2d 1058, 1059 (6th Cir. 1976) (a "[d]etermination of whether a state court is vested with jurisdiction under state law is a function of the state courts, not the federal judiciary"). Also, Attorney Shelton's testimony both at the plea hearing and the PCR hearing discloses that interactions between Petitioner and the C.I. were personally observed and overheard by members of the Berkeley County law enforcement. App. 7, 101. Thus, it is clear that the probable-cause showing for the arrest warrant was not completely dependent on information from the C.I. and, as a result, Petitioner's extensive discussion of case law involving probable cause findings dependent on information from informants does not require a finding that plea counsel was ineffective for not moving to suppress the evidence in Petitioner's case. Moreover, even if plea counsel should have filed a motion to suppress as Petitioner contends, Petitioner cannot show that he was prejudiced by the failure in light of the law cited regarding the effect of a grand jury's indictment because it is unlikely that any such motion would be granted. Also, no prejudice is shown because Petitioner's guilty plea provided him with substantial benefits such as avoidance of a potential twenty-five year sentence without possibility of parole. Because the underlying claim of ineffective assistance of plea counsel is not substantial, Petitioner cannot rely on *Martinez v. Ryan* to satisfy the cause requirement under the procedural bypass analysis. *See Gray v. Pearson*, 526 F. App'x 331, 333 (4th Cir. 2013) (under the first requirement of the *Martinez* exception,

38

Petitioner must "demonstrate that the underlying ineffective-assistance-of-trial counsel claim is a substantial one, which is to say that the [petitioner] must demonstrate that the claim has some merit."); *see also Ford v. McCall*, No. 8:12-2266-GRA, 2013 WL 4434389, at *11 (D.S.C. Aug. 14, 2013) (citing *Horonzy v. Smith*, No. 11-234, 2013 WL 3776372, at *6 (D. Idaho Sept. 12, 2012) ("The application of the *Strickland* test in this instance means that Petitioner is required to show that counsel's representation during the post-conviction proceeding was objectively unreasonable, and that, but for his errors, there is a reasonable probability that Petitioner would have received relief on a claim of ineffective assistance of trial counsel in the state post-conviction matter. This standard is a high one."). Based on the above analysis, Petitioner's Ground Four is procedurally defaulted and Petitioner fails to show cause and prejudice that would allow it to be reviewed in this habeas proceeding. Furthermore, Petitioner has not argued and cannot show that this court's refusal to consider the merits of his defaulted Four would result in a miscarriage of justice because he does not claim to be actually innocent of the charge to which he pleaded guilty and there is nothing in the record showing anything "truly extraordinary" about Petitioner's claims. *See Bousley v. United States*, 523 U.S. at 623; *Schlup v. Delo*, 513 U.S. at 327. Accordingly, because it is procedurally barred, it is recommended that Respondent's Motion for Summary Judgment be granted and Petitioner's Motion for Summary Judgment be denied as to Petitioner's Ground Four.

        c.     Ground Five: Prosecutor Misconduct -- Due Process Violation

As stated above, Petitioner does not respond to Respondent's contention that this Ground was procedurally defaulted. As a result, Petitioner should be found to have conceded that the

Ground was defaulted. See *Satcher v. Univ. of Ark. at Pine Bluff Bd. of Trs.*, 558 F.3d at 735. Nevertheless, if this court were to find that Petitioner's assertion of *Martinez* under the factually related Ground Two satisfies Petitioner's obligation to respond to Respondent's procedural-default contentions relative to Ground Five, it should still find that Petitioner has not shown any basis for this court to relieve him of the default. As the Respondent asserts, *Martinez v. Ryan* cannot be relied on to show cause for the default because *Martinez* only applies where the underlying claim is one of ineffective assistance of trial counsel and this is a claim of prosecutorial misconduct. *See, e.g., Rilley v. Cartlege*, No. 0-12-cv-3503-SB, 2014 WL 4656511, * 7 (D.S.C. Sept. 17, 2014); *Blanding v. Warden of McCormick Corr. Inst.*, No. 8:12-cv-1179-MGL-JDA, 2013 WL 5316613, *17 (D.S.C. Sept. 20, 2013). Thus, Petitioner has failed to show cause for his procedural default of Ground Five and, in absence of cause, there is no need for this court to consider the issue of prejudice to determine that Ground Five is procedurally barred. *See Rodriguez v. Young*, 906 F.2d 1153, 1159 (7th Cir. 1990) ("Neither cause without prejudice nor prejudice without cause gets a defaulted claim into federal court."). Nevertheless, no prejudice is shown from the State's minimal reference to the C.I. audio tape in its statement of the facts at the guilty plea because Petitioner has not shown that the tape was exculpatory or that it was withheld from plea counsel. Furthermore, Petitioner has not argued and cannot show that this court's refusal to consider the merits of his defaulted Ground Five would result in a miscarriage of justice because he does not claim to be actually innocent of the charge to which he pleaded guilty and there is nothing in the record showing anything "truly extraordinary" about Petitioner's claims. *See Bousley v. United States*, 523 U.S. at 623; *Schlup v. Delo*, 513 U.S. at 327.

Accordingly, Respondent's Motion for Summary Judgment should be granted and Petitioner's

Motion for Summary Judgment should be denied as to Petitioner's Ground Five.

C.    Merits Analysis: Grounds One and Three

1.    Ground One: Ineffective Assistance of Plea Counsel

a.    The Parties' Contentions

Respondent contends that the PCR judge's decision that plea counsel was not ineffective

was based on a reasonable application of the facts and was not contrary to established federal law

where the record supports the PCR judge's conclusion where plea counsel testified that he had

fully investigated the case, where Petitioner told the plea judge that he was satisfied with plea

counsel's service and there is no valid reason for this court to discredit his testimony at the plea

hearing, and where the PCR judge found his PCR testimony lacked credibility. ECF No. 37 at

14-22. Respondent further contends that Petitioner cannot show prejudice from plea counsel's

failure to discover or challenge the C.I. audio tape because Petitioner did not produce evidence to

support his claim that the tape was exculpatory and where rejection of the guilty plea would have

been irrational under the circumstances. *Id*. at 22-25. Petitioner responds that his statements of

satisfaction with plea counsel's performance should be disregarded because he became aware of

counsel's deficiencies after the plea hearing. ECF No. 53 at 4. Petitioner further responds that the

record shows that plea counsel "failed to investigate the petitioner's case and misled petitioner as

to the strength of the State's case" because the record shows that the existence of the C.I. audio

tape was material to the plea court's finding of guilt, but plea counsel failed to secure the tape

and listen to it. *Id*. Petitioner further responds that plea counsel was ineffective because he failed

to discover an audio tape recording of Petitioner's interrogation and statement, failed to question

the truth of law enforcement statements, and failed to challenge the State's alleged evidence where there was a nineteen gram difference between the amount of cocaine that Petitioner was charged with trafficking and the weight of the cocaine that was seized for use against him. *Id.* at 5. Respondent replies that Petitioner never raised the cocaine weight difference before the PCR court and, therefore, waived any opportunity to rely on it to show ineffectiveness in this court in absence of a showing of cause and prejudice, particularly in light of the legal presumption of effectiveness. ECF No. 60 at 6-9.

### b.    Applicable Law

As previously noted, the Fourth Circuit has held that counsel must conduct a basic factual and legal investigation to determine if a defense is available or can be developed. *Sneed v. Smith,* 670 F.2d at 1352. "At the heart of effective representation is the independent duty to investigate and prepare." *Stevens v. Johnson*, 575 F. Supp. at 885. "Informed evaluation of potential defenses to criminal charges and meaningful discussion with one's client of the realities of his case are cornerstones of effective assistance of counsel." *Id.* However, *Cullen v. Pinholster*, 563 U.S. at 181 holds that a federal courts' review under § 2254 is limited to "the record that was before the state court that adjudicated the claim on the merits," and both the Fourth Circuit, this court, and South Carolina state courts have found that a habeas petitioner or PCR applicant does not sustain his burden of proof on an ineffective-assistance claim for failure to locate or call witnesses if the alleged witness is not called to provide testimony to the state court considering the claim. *E.g.*, *Bassette v. Thompson*, 915 F.2d 932, 939-41 (4th Cir. 1990); *Joe v. Padula*, No. 9:11-cv-1090-TLW-BM, 2012 WL 2339634, at *7 (D.S.C. Mar. 1, 2012), *report and recommendation adopted*, 2012 WL 2325662 (D.S.C. June 19, 2012); *see also Bannister v. State*,

509 S.E.2d 807, 809 (S.C. 1998) ("This Court has repeatedly held a PCR applicant must produce the testimony of a favorable witness or otherwise offer the testimony in accordance with the rules of evidence at the PCR hearing in order to establish prejudice from the witness' failure to testify at trial."); *Glover v. State*, 458 S.E.2d 539, 540 (S.C. 1995) ("[B]ecause the other witnesses respondent claimed could have provided an alibi defense did not testify at the PCR hearing, respondent could not establish any prejudice from counsel's failure to contact these witnesses."); *Clark v. State*, 315 S.C. 385, 434 S.E.2d 266, 267-68 (S.C.1993) (pure conjecture as to what a witness' testimony would have been is not sufficient to show a reasonable probability the result at trial would have been different); *Underwood v. State*, 309 S.C. 560, 425 S.E.2d 20, 22 (S.C.1992) (prejudice from trial counsel's failure to interview or call witnesses could not be shown where witnesses did not testify at PCR hearing).

Also, this and other federal courts have held that where trial strategy is concerned in an ineffective-assistance-of-counsel claim, the United States Supreme Court has stated, "[b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Hamilton v. Warden, Lieber Corr. Inst.*, No. 5:13-2506-MGL, 2015 WL 251243, at *17 (D.S.C. Jan. 20, 2015) (quoting *Strickland*, 466 U.S. at 689); *see Emmett v. Kelly*, 474 F.3d 154, 167-69 (4th Cir. 2007) (no prejudice to petitioner from counsel's trial strategy not to call certain witnesses in mitigation); *Lovitt v. True*, 403 F.3d 171, 181 (4th Cir. 2005) (refusing to misuse "power of hindsight" to second guess trial counsel's

43

"plausible strategic judgments.") (quoting *Bunch v. Thompson*, 949 F.2d 1354, 1364 (1991)).

Furthermore, the United States Supreme Court has held that

> deference to the state court's prejudice determination is all the more significant in light of the uncertainty inherent in plea negotiations . . . : The stakes for defendants are high, and many elect to limit risk by forgoing the right to assert their innocence. A defendant who accepts a plea bargain on counsel's advice does not necessarily suffer prejudice when his counsel fails to seek suppression of evidence, even if it would be reversible error for the court to admit that evidence.

*Premo v. Moore*, 562 U.S. 115, 129 (2011). Finally, the Fourth Circuit has held that a PCR court's credibility findings are entitled to deference by this court. *Wilson v. Ozmint*, 352 F.3d 847, 858-859 (4th Cir. 2003); *Cagle v. Branker*, 520 F.3d 320, 324 (4th Cir. 2008). Additionally, the Supreme Court has ruled that "federal habeas courts [have] no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983). The Fourth Circuit has also held that district courts should "accord appropriate deference" to the state PCR court's factual findings and that such findings are presumed to be correct and can only be overcome by the presentation of "clear and convincing evidence." *Watkins v. Rubenstein*, 802 F.3d 637, 643 (4th Cir. 2015) (citing 28 U.S.C. § 2254(e)(1) and *DeCastro v. Branker*, 642 F.3d 442, 449 (4th Cir. 2011)).

### c.     Discussion

Having reviewed the record before the PCR judge and this court, the undersigned finds that Petitioner has not sustained his burden of proof to show that the PCR judge's decision on his claim of ineffective assistance of plea counsel was unreasonable or contrary to established federal law. Initially, Petitioner's statements of what the record "shows" are largely exaggerated misrepresentations. For example, Petitioner says that the record shows that the State suppressed

the C.I. audio tape and that plea counsel never reviewed the audio tape. However, the record actually shows that plea counsel, now deceased, told the plea judge that he fully investigated the case and did not say anything about missing any of the State's discovery material. Plea counsel never raised any objection to the State's attorney's reference to the audio tape during his factual statement during the plea hearing. Petitioner appears to have placed excessive importance and improper interpretation on the PCR hearing testimony from the State's plea attorney Shelton to the effect that he did not know whether the audio tape was provided to plea counsel. This equivocal statement cannot stand for the proposition that plea counsel did not review the C.I. audio tape as Petitioner asserts. Read in context, it is clear that Attorney Shelton was not directly involved in the discovery process and during his PCR testimony he was only referring to written information from a file he did not create. He expressed no personal knowledge one way or another about whether plea counsel reviewed the C.I. audio tape. The only person who testified that plea counsel did not review the audio tape was Petitioner himself, and the PCR court found his testimony lacking in credibility. This court should defer to that credibility determination.

Additionally, Petitioner asserts that the record shows that "[plea]counsel failed to request the audio tape of the interrogation after being informed of its existence," ECF No. 53 at 5; however, Petitioner does not provide this court with a citation to any place in the record where that issue is discussed and the undersigned's review of the record discloses only one possible cryptic reference in Petitioner's own somewhat convoluted PCR testimony. App. 88 (discussion of "recorded conversations" and "transcripts" that the State allegedly had, but that Petitioner said a lawyer told him "doesn't exist"). Petitioner produced no supporting evidence for that assertion such as testimony from Attorney Bishop who allegedly provided him with the information about

45

which he testified. Petitioner also asserts that the record shows inadequate investigation and "falsified information" about the weight of the cocaine that he was charged with trafficking, but the record shows that counsel did bring the discrepancy to the plea court's attention and noted that the difference in amount would still put Petitioner in the more serious range for sentencing and noting that "[h]e definitely had more than twenty-eight." App. 8. Petitioner did not present any testimony or other evidence regarding the cocaine's weight during the PCR hearing.

Furthermore, Petitioner has presented no evidence, other than his own, self-serving testimony, to support any finding that plea counsel's failure to file motions to suppress or other pretrial motions contesting the State's evidence was not a reasonable strategy. As noted by Respondent, without opposing proof, Petitioner failed to overcome the presumption of effectiveness that applies to criminal attorneys' actions. While Petitioner raises several issues that he believes counsel should have raised in court before the guilty plea was entered, he failed to present any witness testimony or affidavits to support his assertions and he failed to produce the disputed audio tapes in any state court. Thus, the PCR's court's decision that plea counsel was not ineffective is entitled to significant deference by this court and Petitioner is not entitled to habeas relief therefrom.

The PCR judge also properly found that even if plea counsel should have done the investigation and taken the legal actions that Petitioner contends he should have, Petitioner was not prejudiced by any failure on plea counsel's part. Petitioner was facing a trial that could have resulted in a conviction that carried a mandatory 25-year sentence without the possibility of parole. The C.I.'s involvement was not the only evidence that the State had against Petitioner. There were also personal observations by law enforcement and a confession from Petitioner.

46

Through plea counsel's services, he was allowed to plead guilty to a considerably lesser-included offense and received a much more lenient sentence. Thus, the record supports the PCR court's decision that Petitioner failed to sustain his burden of showing prejudice from any ineffectiveness. Accordingly, Respondent's Motion for Summary Judgment should be granted and Petitioner's Motion for Summary Judgment should be denied as to Petitioner's Ground One.

2.      Ground Three: Involuntary Plea Entered Without Access to Exculpatory Audio Tape

a.      The Parties' Contentions

Respondent contends that this Ground is without merit because Petitioner did not prove that plea counsel was ineffective with regard to the C.I. audio tape as shown in connection with Petitioner's Ground One. ECF No. 37 at 30-31. Petitioner responds that the PCR judge's decision was based on unreasonable factual findings because the guilty plea was not knowingly entered where Petitioner and plea counsel did not have access to the allegedly material, exculpatory C.I. audio tape when determining whether to enter the plea and, therefore, he was unable to accurately determine the strengths or weaknesses of the State's case against him. ECF No. 53 at 16-18. Petitioner contends that plea counsel erroneously told him that there was a "strong case against him" based on evidence "that does not exist." *Id*. at 19.

b.      Applicable Law

A guilty plea is constitutionally valid if it "'represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill*, 474 U.S. at 56 (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). "Where, as here, a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the

voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." *Id*. at 56 (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)). A plea is knowingly and intelligently made if a defendant is "'fully aware of the direct consequences'" of his guilty plea and not induced by threats, misrepresentation, including unfulfilled or unfulfillable promises, or by "'promises that are by their nature improper as having no relationship to the prosecutor's business.'" *Brady v. United States*, 397 U.S. 742, 755 (1970) (quoting *Shelton v. United States*, 246 F.2d 571, 572 n. 2 (5th Cir. 1957)). Because a guilty plea is a solemn, judicial admission of the truth of the charges against an individual, a criminal inmate's right to contest the validity of such a plea is usually, but not invariably, foreclosed. *Blackledge v. Allison*, 431 U.S. 63, 74-75 (1977). Therefore, statements made during a guilty plea should be considered conclusive unless a criminal inmate presents reasons why he should be allowed to depart from the truth of his statements. *Crawford v. United States*, 519 F.2d 347 (4th Cir. 1975), *overruled on other grounds by United States v. Whitley*, 759 F.2d 327, 350 (4th Cir. 1985); *Edmonds v. Lewis*, 546 F.2d 566, 568 (4th Cir. 1976). Also, a defendant who has entered a valid guilty plea has admitted his guilt and cannot challenge the sufficiency of the evidence presented as a factual basis for his guilty plea. *United States v. Willis*, 992 F.2d 489, 490-91 (4th Cir. 1993). Furthermore, the United States Supreme Court has held that a criminal defendant does not need to know all of the potential weaknesses in the government's case in order to make his admission of guilt voluntary and intelligent. *See Brady v. United States,* 397 U.S. at 757 ("The rule that a plea must be intelligently made to be valid does not require that a plea be vulnerable to later attack if the defendant did not correctly assess every relevant factor entering into his decision.").

c.    Discussion

Having reviewed the complete record in this case, the undersigned finds that the PCR judge's determination that Petitioner failed to prove that his guilty plea was involuntary was based on a reasonable application of the facts and was not contrary to established federal law. As discussed in connection with Ground One, Petitioner's unsupported assertions did not prove that any exculpatory evidence was withheld from plea counsel. Plea counsel specifically told the plea court, in Petitioner's presence, that he had fully investigated the State's case and had discussed the results of that investigation with Petitioner over a period of years. Petitioner presented no evidence to refute plea counsel's assertions in this regard. As stated elsewhere in this Report, Petitioner did not present any proof other than his own self-serving allegations and assertions showing that the C.I. audio tape was exculpatory. Although Petitioner alleges that a former attorney told him that his voice could not be heard on the tape, there is no testimony or affidavit to that effect from the attorney in the record. Also, the tape itself was not admitted into evidence at the PCR hearing or in any state court hearing. Instead, the existence of an audio tape was only briefly mentioned as part of the State's factual narrative for the plea and that narrative made it clear that the tape was not as important to the State's case as Petitioner would have this court believe. In addition to recorded telephone conversations, the State also had a relatively large amount of cocaine, testimony from law enforcement based on their personal observations of Petitioner's activities, and a confession from Petitioner. Thus, even if Petitioner's voice could not be heard on the C.I. audio tape and even if the tape was not provided to plea counsel, the State still had other substantial evidence of Petitioner's guilt. As a result, Petitioner cannot show that

he was prejudiced by the Solicitor's minimal references to the C.I. audio tape in his factual statement at the plea hearing.

Also, in light of his affirmative responses to the plea judge's questions about his satisfaction with plea counsel's services, his understanding of the rights he was waiving, and his guilt of the crime to which he was pleading guilty, Petitioner's after-the-fact contentions that his responses to the plea judge were coached by plea counsel were insufficient to require the PCR court to disregard the responses and are without merit in this court as well. *See, e.g.*, *United States v. Jackson*, No. 7:07-cr-711-4-TMC, 2014 WL 472020, *7 (D.S.C. Feb. 5, 2014) (discrediting a petitioner's assertion of being coached by plea counsel); *see also United States v. Padilla-Galarza*, 351 F.3d 594, 598 (1st Cir. 2003) (in light of responses during plea hearing, guilty plea could not be withdrawn despite assertions that defendant was coached by counsel). Thus, Petitioner is bound by his responses during the guilty plea hearing, and the PCR judge reasonably found that the guilty plea was voluntary. Accordingly, Respondent's Motion for Summary Judgment should be granted and Petitioner's Motion for Summary Judgment should be denied as to Petitioner's Ground Three.

IV.     Conclusion

The undersigned has considered all five of Petitioner's Grounds for habeas relief and recommends that the Petition be dismissed. It is recommended that Respondent's Motion for Summary Judgment, ECF No. 38, be GRANTED, that Petitioner's Motion for Summary Judgment, ECF No. 52, be DENIED, and that the Petition in this case be DISMISSED with prejudice.

IT IS SO RECOMMENDED.

50

May 26, 2016                              Kaymani D. West
Florence, South Carolina                 United States Magistrate Judge

**The parties' attention is directed to the important notice on the following page.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 2317**
**Florence, South Carolina 29503**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).